**STATE of Minnesota, Appellant,**

v.

**Jeremiah John TREI, Respondent.**

**No. C3–00–1857.**

Court of Appeals of Minnesota.

April 10, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and Michael K. Riley, Sr., Nicollet County Attorney, Jerold M. Lucas, Chief Deputy County Attorney, St. Peter, MN, (for appellant).

Mark D. Nyvold, St. Paul, MN, (for respondent).

Considered and decided by SCHUMACHER, Presiding Judge, KALITOWSKI, Judge, and STONEBURNER, Judge.

## OPINION

SCHUMACHER, Judge

Appellant State of Minnesota challenges the district court's order dismissing the charge of first-degree assault brought against respondent Jeremiah John Trei. We reverse and remand for trial.

## FACTS

On the evening of June 3, 2000, Officer Dennis McKinney of the North Mankato Police Department received a report that Trei had committed a domestic assault and had stolen a car. McKinney discovered that Trei lived in an apartment building within McKinney's patrol area. McKinney waited in the parking lot of the apartment complex on the chance that Trei would return to his home. Eventually, Trei

drove into the parking lot, exited his vehicle, and went into the building.

Trei then came out of the building, at which point McKinney approached him and asked to see his identification. Trei responded that he had no identification. McKinney then asked Trei to accompany him to his cruiser so that McKinney could identify Trei in connection with an incident that had occurred at Madison Lake. Upon learning this information, Trei immediately uttered a profanity and ran into the apartment building.

McKinney gave chase and knocked on the door to the apartment that Trei had just entered. A female, later identified as Trei's sister, opened the door and asked McKinney what was going on. McKinney twice asked where the person was who had just run into the apartment. McKinney took one step into the apartment and spotted Trei approximately 10 to 15 feet to his right, holding 2 large kitchen knives. Trei was holding the knives roughly at the height of his head with the blades pointing down. Trei took two quick steps toward McKinney while uttering the phrase, "bring it on, f* * *er," and moving the knives in an up-and-down motion. When Trei had come within about eight feet of McKinney, McKinney drew his gun, told Trei to stop, and ordered him to drop the knives. Trei stopped but did not drop the knives and continued to handle them in the same way as before.

At that point, another person, later identified as Troy Brandsgaard, emerged from the kitchen. Trei began pacing back and forth with the knives still in hand. McKinney instructed both Brandsgaard and Trei's sister to stay away from Trei. McKinney again ordered Trei to lay down his weapons. Brandsgaard also attempted to persuade Trei to lay down his weapons. Eventually, Trei acceded and threw down the knives.

The prosecutor charged Trei with violating several criminal statutes, including Minn.Stat. § 609.221, subd. 2(a) (1998), assault in the first degree. On Trei's motion, the district court held a hearing to determine whether to dismiss this count based on lack of probable cause. The district court determined, based on the above-stated facts, that it was "probable" that Trei "produced the knives with the intent to cause fear in the officer of immediate harm or death." The district court found these facts "insufficient" to demonstrate that Trei "used or attempted to use deadly force" and therefore dismissed the count of assault in the first degree for lack of probable cause. The state appealed pursuant to Minn.R.Crim.P. 28.04.

## ISSUE

Did the trial court err in dismissing the count of assault in the first degree for lack of probable cause?

## ANALYSIS

When the state appeals a pretrial order under Minn.R.Crim.P. 28.04, a reviewing court will reverse only if the state demonstrates clearly and unequivocally that the district court erred in its judgment and, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987). Dismissal of a complaint satisfies the critical impact requirement. *State v. Dendy*, 598 N.W.2d 4, 6 (Minn.App.1999), *review denied* (Minn. Sept. 28, 1999); *see also State v. Varnado*, 582 N.W.2d 886, 889 & n. 1 (Minn.1998) (dismissal of criminal complaint following suppression of evidence satisfies critical impact requirement). Thus, we examine for clear error the propriety of the district court's application of the statutes at issue to the undisputed facts of this case.

Probable cause exists where the facts would lead a person of ordinary care and prudence to hold an honest and strong suspicion that the person under consideration is guilty of a crime. *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978). In addressing a probable cause challenge, the court must determine whether, given the

facts disclosed by the record, it is fair and reasonable to require the defendant to stand trial. *State v. Florence*, 306 Minn. 442, 457, 239 N.W.2d 892, 902 (1976). That is, whether the facts appearing in the record "would preclude the granting of a motion for a directed verdict of acquittal if proved at trial." *Id.* at 459, 239 N.W.2d at 903. When considering a directed verdict, the trial court must determine

> whether, as a matter of law, the evidence is sufficient to present a fact question for the jury's consideration. In making this decision, the court must view the credibility of the evidence, and every inference which may fairly be drawn therefrom, in favor of the adverse party.

*Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn.1980) (citations omitted).

Here, Trei is charged with assault in the first degree. Specifically, he is accused of

> assault[ing] a peace officer * * * by using or attempting to use deadly force * * * while the officer * * * is engaged in the performance of a duty imposed by law, policy, or rule * * *.

Minn.Stat. § 609.221, subd. 2(a) (1998). For the purposes of the statute, the term "deadly force" has a particular definition. *Id.*, subd. 2(c)(2) (1998) (cross-referencing to Minn.Stat. § 609.066). Deadly force is defined as

> force which the actor uses with the purpose of causing, or which the actor should reasonably know creates a substantial risk of causing, death or great bodily harm.

Minn.Stat. § 609.066, subd. 1 (1998).

■ There is no dispute that Trei made a quick movement toward McKinney with knives in hand while uttering words to the effect that he wished to engage McKinney in combat. Had Trei carried out the attack to completion, there can be little doubt that it would have constituted "deadly force" within the statutory meaning of the term. But when McKinney drew his

gun, Trei stopped short of doing so. The district court examined the undisputed facts and concluded that, most likely, Trei's actions constituted a threat rather than an attempt to use deadly force. The district court determined that the evidence on the record was insufficient to conclude that Trei had made an attempt to use deadly force.

■ In deciding whether there exists probable cause to hold a defendant over for trial, the trial court is not to invade the province of the jury. *State v. Hegstrom*, 543 N.W.2d 698, 703 (Minn.App.1996) (trial court's determination that probable cause was lacking was error where trial court made determination that properly belonged to jury), *review denied* (Minn. Apr. 16, 1996); *State v. Tolbert*, 488 N.W.2d 11, 13 (Minn.App.1992) (same); *State v. Poupard*, 471 N.W.2d 686, 690 (Minn.App. 1991) (same). A person is guilty of an attempt to commit a crime if that person takes a "substantial step," beyond mere preparation, toward commission of the crime with criminal intent. Minn.Stat. § 609.17, subd. 1 (1998).

Here, McKinney testified that Trei wielded deadly weapons while charging toward McKinney. Based on this testimony, a jury could reasonably conclude that Trei's initial movements toward McKinney constituted an intentional "substantial step" toward the use of deadly force, regardless of the fact that Trei cut off the attack prematurely upon seeing McKinney's weapon. *See Davis v. State*, 595 N.W.2d 520, 526 (Minn.1999) (evidence sufficient to support conviction for attempted murder where defendant made stabbing motion toward victim, although victim was not actually injured because blade had broken off); *State v. Peterson*, 262 N.W.2d 706, 707 (Minn.1978) (evidence was sufficient to support conviction for attempted rape where defendant grabbed victims and gave chase when they ran away, ending pursuit only upon seeing police car). Thus, probable cause exists as to whether

Trei made an attempt to use deadly force against McKinney.

## DECISION

The district court erred in dismissing the count of assault in the first degree for lack of probable cause. Whether Trei actually committed the offense is an issue for the jury to decide.

**Reversed and remanded.**

KALITOWSKI, Judge (dissenting)

I respectfully dissent. The issue here is whether a jury could find that Trei assaulted McKinney by using or attempting to use deadly force. In determining whether an act constitutes "deadly force," the Minnesota Supreme Court in *Johnson v. Morris*, 453 N.W.2d 31, 38 (Minn.1990), cited with approval section 3.11 of the Model Penal Code, which states:

> A threat to cause death or serious bodily harm, by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force.

Model Penal Code § 3.11(2) (Proposed Official Draft 1962).

It is undisputed that at no time was Trei closer than eight feet from McKinney and that at all times the blades of the knives in Trei's hands were pointed downward. On these facts the district court properly concluded that while Trei threatened to assault McKinney, as a matter of law a jury could not find that Trei assaulted McKinney by using or attempting to use deadly force. I would affirm the district court.